IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE: : CASE NO. 02-11207

GLADYS VARGAS MARRERO, : CHAPTER 7

    Debtor :

_____

GLADYS VARGAS MARRERO, : ADV. PROC. NO. 04-0295

    Plaintiff :

v. :

R & G MORTGAGE CORP., et al., :

    Defendant(s) :

_____

## OPINION AND ORDER

This case is before the court upon the parties' cross-motions for summary judgment. For the reasons set forth below, debtor/plaintiff's motion for partial summary judgment is granted in part, defendant's cross-motion for summary judgment is denied. The matter will be set for hearing on whether or not defendant complied with the required disclosures, whether plaintiff exercised her right to rescission of the mortgage, and damages.

### Procedural Background

Plaintiff filed a petition under chapter 13 of the Bankruptcy Code on October 21, 2002; it was subsequently converted to a petition under chapter 7 of the Code on November 3, 2003, and a trustee was appointed on November 18, 2003.

Plaintiff brought an action against R & G Mortgage Corp. ("R & G") in the United States District Court for the District of Puerto Rico on January 13, 2003; the action was transferred to the bankruptcy court on September 10, 2004, upon plaintiff's request, by order of the district court dated

September 3, 2004, pursuant to 28 U.S.C.

§ 157(a) (dkt. #44 in the bankruptcy case).

This adversary proceeding was opened on December 6, 2004. A status conference was held on March 28, 2005, at which the time the court instructed the parties to brief whether the adversary proceeding is core or non-core[1], granted the parties time to complete discovery and file dispositive motions, and ordered the parties to file the documents filed before the district court.[2]

Another status conference was held on March 3, 2006, at which time the court noted that discovery was complete and granted the parties sixty days to file dispositive motions and held the scheduling of a pre-trial conference in abeyance pending a decision on the dispositive motions.

Plaintiff filed a partial motion for summary judgement (dkt. #30) and statement of uncontested facts (dkt. #31) on May 15, 2006. According to the plaintiff, R & G did not comply with the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639(b) ("HOEPA")[3], and Federal Reserve Board Regulation Z, 12

[1]No such briefs appear in the adversary proceeding docket, and the issue is not addressed in the motions for summary judgement that each party has filed.

[2]Apparently they have not done so; none are on file in this adversary proceeding. The plaintiff did attach R & G's answer to the complaint as an exhibit to their statement of uncontested facts (dkt. #31); the same was originally filed in the district court on March 14, 2003.

[3]Section 1639 sets forth the consumer credit disclosure requirements for certain mortgages, defined in subsection (a)(1) as those mortgages referred to in section 1602(aa). Section 1602(aa), in turn, refers to "a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if–(A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or (B) the total points and fees payable by the consumer at or before closing will exceed the great of–(I) 8 percent of the total loan amount; or (ii) $400. 15 U.S.C. § 1602(aa)(1). R & G does not dispute that the transaction at issue is the type of mortgage described in section 1602(aa). As to this type of mortgage, section 1639(b)

- 2 -

C.F.R. § 226, in the handling of her mortgage loan by failing to provide her with the material disclosures required by that statute. Further, plaintiff argues that she exercised her right to rescind her loan transaction and R & G failed to perform as mandated by the TILA, thereby entitling the plaintiff to actual damages, statutory damages, attorneys' fees and costs. Plaintiff asks the court to find R & G liable, order R & G to rescind the mortgage and cancel their security interest in her property, and schedule a hearing on damages.

On June 6, 2006, the court entered an order to show cause (dkt. #32) why partial summary judgment should not be granted.

R & G filed a response in opposition to the plaintiff's motion for summary judgment and a cross-motion for summary judgment, along with a statement of uncontested facts, and opposition to the plaintiff's statement of uncontested facts, and exhibits, on July 27, 2006 (dkt. #35). R & G alleges that the TILA does not apply herein because the mortgage refinancing loan at issue was obtained with a commercial purpose, and because the transaction was the refinancing of an existing loan by the same creditor regarding the same property. In the alternative, if the court finds that the TILA applies, R & G argues that debtor is not entitled to any legal remedies thereunder. R & G asks the court to dismiss this adversary proceeding with prejudice and award costs and attorneys fees.

On September 28, 2006, the court entered an order (dkt. #41) granting the plaintiff's request that the proceedings be stayed for sixty days, until October 31, 2006 (dkt. #40).

A status conference was held on January 22, 2007; the pre-trial was continued without a date and the plaintiff was granted twenty days to oppose the defendant's motion for summary judgment (dkts. #48 (transcript) and #49 (minutes)).

provides that "[t]he disclosures required by this section shall be given not less than 3 business days prior to consummation of the transaction." 15 U.S.C. § 1639(b)(1).

- 3 -

After receiving three extensions of time, the plaintiff filed a response to the defendant's cross-motion for summary judgment on April 2, 2007 (dkt. #60).

Findings of Fact[4]

1. R & G Mortgage is a corporation who at all times material to this complaint was engaged in the business of providing consumer loans guaranteed with real property in Puerto Rico and was a creditor for Truth in Lending Purposes; it acted on more than 150 consumer credit applications annually, making defendant a creditor within the meaning of TILA, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17).

2. Debtor, Gladys Vargas Marrero, bought her residence on May 30, 1997.

3. Debtor entered into a Services Contract with Expression Mortgage Brokers which is dated November 15, 1999.

4. Debtor entered into a Construction Contract with Rafael Soto in representation of Luhema Construction; the contract is dated November 15, 1999.

5. On January 18, 2000, debtor and R & G entered into a loan transaction guaranteed by real property.

6. Debtor's residence served as collateral for R & G's mortgage loan.

7. Debtor's loan with R & G was a refinancing of a previously existing mortgage loan with R & G Mortgage Corp.; R & G was the holder of the note as assignee to the original creditor, SMN Mortgage corporation.

8. Expression Mortgage Brokers was paid a fee and participated in the transaction in controversy.

---

[4]These findings of fact are based upon those proposed by the parties. *See* dkts. #31, 35 & 60.

- 4 -

9. The mortgage had a principal amount of $62,300.00.

10. As part of the plaintiff's refinancing with R & G which took place on January 18, 2000, $13,473.37 were used to pay settlement charges for the cancellation of a second mortgage and to pay off other debt.

11. The remaining balance of $48,826.63 was used by plaintiff to pay off her previous debt with R & G; R & G was the holder of the note as assignee of the original creditor.

12. Debtor was charged and paid a loan origination fee of $3,115.00.

13. Debtor was charged and paid a mortgage broker's fee to Expression Mortgage of $4,550.00.

14. Debtor was charged and paid prepaid interest of $424.28.

15. The Settlement Statement establishes that plaintiff was charged $280.00 to be paid to Expression Mortgage Brokers for "Est. Financieros/Colecturia".

16. The disclosed Annual Percentage Rate of the mortgage was 11.6944%.

17. The disclosed monthly mortgage payments amount was $546.72.

18. In the mortgage transaction, debtor was informed that the amount charged for "Total Settlement Charges" was $9,833.37.

19. R & G sent a letter to debtor dated February 28, 2000, stating that her loan number 000-0006119615 had been cancelled in its entirety.

20. On December 5, 2000, R & G filed a collection of money and mortgage foreclosure complaint against debtor, alleging arrears with her mortgage obligations, in the Superior Court of Bayamón, case no. DCD-2000-2819.

21. Plaintiff sent a letter to R & G on October 18, 2002, which was received.

22. Debtor's January 18, 2000 mortgage loan transaction was an extension of credit by a

creditor subject to HOEPA and the implementing Federal Reserve Board Regulation Z, § 226.32.

23. Debtor stated under oath in Schedule J of her original chapter 13 bankruptcy petition in case no. 02-11207 that her payment plan capacity per month, after liabilities, was $600.00.

24. Debtor stated under oath in her original chapter 13 bankruptcy petition in case no. 02-11207 that her monthly expenses were $697.61.

25. Debtor's chapter 13 bankruptcy case was converted to one under chapter 7.

Discussion

*Core v. Non-core*

Although the parties have not briefed the issue, as ordered by the court, of whether or not the instant action is a core or non-core matter, the court is duty bound to so determine. 28 U.S.C.A. § 157(b)(3). The court finds that the instant complaint alleging violations to TILA. HOEPA, and Federal Reserve Regulation Z, is a non-core matter related to the bankruptcy as it is an action that could exist outside bankruptcy. In re Rozell, 357 B.R. 638, 642 (Bankr. N.D. Ala . 2006); In re Scotland Guard Services, Inc., 179 B.R. 764, 766-67 (Bankr. D.P.R. 1993). Thus, the bankruptcy court may only submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C.A. § 157(c)(1).

*Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106

S.Ct. 2548,

91 L.Ed.2d 265 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10A Wright and Miller, Federal Practice and Procedure § 2712 (3d ed. 1998). "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id.

*Application of the TILA to the Mortgage at Issue*

As a threshold matter, R & G argues that the TILA does not apply to the facts herein because debtor's loan was commercial in nature, and that the TILA only protects consumer transactions. In support of their argument, R & G points to the debtor's loan application and the documents filed with it. The Service Contract that debtor entered into with Express Mortgage Brokers states[5]:

> Appear, on one side, EXPRESS MORTGAGE BROKERS with offices at STREET #55 Block 68 #1- VILLA CAROLINA, CAROLINA, P.R. Represented by the undersigned and which shall hereinafter be referred to as the first party.
>
> ON THE OTHER SIDE, Gladys Vargas which shall hereinafter be referred to, as the second party. Both parties have expressed that they have entered into an agreement and now state the following:
>
> FIRST: The first party is dedicated to the processing of loans of conventional mortgages, for interim and permanent

---

[5]As per R & G's certified translation.

- 7 -

constructions that are commercial, both for purchases and for refinancing of properties and for such purposes the second party hires the services of the first party with relation to the project referenced, and to which we shall hereinafter refer to as the project.

The Service contract is dated November 15, 1999. The Construction Contract which debtor entered into on that same date with Rafael Soto of "Luhema Construction" states:

FIRST: The first party appearing shall pay the construction work for the appearing second party of two concrete apartments measuring 24'0" x 41'0" in the amount of $52,500, accepting today November 15, 1999. The same shall materialize when the client obtains the authorization of the loan.

SECOND: The second party appearing agrees to construct the apartment described above for the first party within a term of 90 to 120 days counted from the date to be established after the obtainment of an authorized loan.

According to R & G, these documents establish that debtor's loan was for commercial construction purposes, and therefore the protections of the TILA do not apply to her loan.

The disclosure requirements of the TILA only apply to consumer credit transactions - those "in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, household, or agricultural purposes." 15 U.S.C. § 1602(h); see also, 12 C.F.R. § 226.2(a)(12). The TILA does not apply to "credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, or to government or governmental agencies or instrumentalities, or to organizations." 15 U.S.C. § 1603(1); see also, 12 C.F.R. § 226.3(a). A residential mortgage transaction is defined as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained

- 8 -

against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w). "Dwelling" is, in turn, defined as "a residential structure or mobile home which contains one to four family housing units, or individual units of condominiums or cooperatives." 15 U.S.C. § 1602(v).

The documents submitted by debtor with her "Reply to Response in Opposition to Plaintiff's Motion for Summary Judgment" (dkt. #60) establish that the loan at issue is a conventional mortgage over debtor's primary residence, and is a "cash-out refinance" for the purpose of cancelling debt, home improvement and investment. *See* Exhibit 1 to dkt. #60 "Uniform Underwriting and Transmittal Summary"; and Exhibit 2 to dkt. #60 "Uniform Residential Loan Application".

The language from the "Service Agreement" cited by R & G, to wit "[t]he first party is dedicated to the processing of loans of conventional mortgages, for interim and permanent constructions that are commercial, both for purchases and for refinancing of properties" is vague at best and certainly does not establish that the loan herein is commercial in nature, especially in light of the application documents provided by debtor.

Morever, many courts have found that loans taken for construction or home improvement purposes are "consumer loans" for the purpose of TILA. In Tower v. Moss, 625 F.2d 1161 (5th Cir. 1980), the court concluded that a mortgage taken on a property which was rented by the owner, in order to make repairs and improvements, was a credit transaction "primarily for personal, family, household, or agricultural purposes" because the owner had lived in the house for a long time and expected to reside in the house upon her retirement. Id. at 1166-1167. The court stated "[w]e must examine the transaction as a whole and the purpose for which the credit was extended in order to determine whether this transaction was

primarily consumer or commercial in nature", noting "the nature of the credit transaction is ultimately determined by the entire surrounding factual circumstances". Id. at 1166. *See also*, FDIC v. Hughes Development Company, Inc., 684 F. Supp. 616, 623 (D. Minn. 1988) ("When, as in the present case, a creditor extends credit for home improvements, that loan constitutes a consumer transaction within the meaning of the Truth-In-Lending Act.")

The court finds that the loan herein constitutes a residential mortgage transaction and an extension of consumer credit within the meaning of TILA and Regulation Z.

*The Disclosure Requirements of the TILA*

Debtor argues that R & G did not comply with the TILA because it failed to provide her with the material disclosures required by the statute three days in advance of the closing of her high rate mortgage[6] transaction as required by the Home Ownership and Equity Protection Act (HOEPA), and failed to provide her with the additional disclosures required by the HOEPA.

The Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, ("TILA"), requires lenders to make certain disclosures to consumers, informing them of their right to rescind lending transactions when the loan is secured by their primary residence. Rodrigues v. Members Mortgage Co., Inc., 323 F. Supp. 2d 202, 205 (D. Mass. 2004). "Congress enacted TILA 'so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'" Id., citing 15 U.S.C. § 1601(a). "The TILA vests the Board of Governors of the Federal Reserve Board with broad power to

---

[6]R & G admits that the mortgage at issue is a high rate mortgage subject to the provisions of HOEPA. *See* Answer to the Complaint ¶ 44, exhibit 3 to dkt. #31; *see also*, R & G's opposition to plaintiff's statement of uncontested facts, dkt. #35 at ¶ 22, p. 3.

- 10 -

promulgate regulations regarding the interpretation and implementation of the Act." Rodrigues v. U.S. Bank (In re Rodrigues), 278 B.R. 683, 686 (Bankr. D.R.I. 2002), citing Mourning v. Family Publications Serv., 411 U.S. 356, 93 S. Ct. 1652, 36 L.Ed.2d 318 (1973). The Federal Reserve Board regulations, known as "Regulation Z", are set forth at 12 C.F.R. Part 226 (2004). Id. Courts have imposed a standard of strict liability under TILA where a lender has violated any of its provisions, even where such violations are "merely technical" or "minor". Id. at 687.

The Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, sets forth the consumer credit disclosure requirements for certain mortgages, defined in subsection (a)(1) as those mortgages referred to in §1602(aa). R&G does not dispute that the transaction at issue is the type of mortgage described in § 1602(aa). As to this type of mortgage, § 1639(b) provides that "[t]he disclosures required by this section shall be given not less than 3 business days prior to consummation of the transaction." Since the loan transaction was consummated on January 18, 2000, these disclosures should have been provided by January 15, 2000.

The disclosures required by § 1639 include two specific disclosures ("you are not required to complete this agreement..." and "...you could lose your home...") in subsections (a)(1)(A)and(B) and an annual percentage rate disclosure in subsections (2)(A) and (B). The timing of the disclosures is addressed in subsection (b). Subsection (c) discusses the restrictions on pre-payment penalties, subsection (d) sets limitations after default, subsection (e) prohibits balloon payments, subsection (f) prohibits negative amortization, subsection (g) addresses prepaid payments, subsection (h) prohibits extending credit without regard to the consumer's payment ability, subsection (I) addresses home improvement contracts, and

- 11 -

subsection (j) provides that any mortgage containing a provision prohibited by this section will be deemed a failure to deliver material disclosures.

The debtor alleges that all the disclosures given to her by R & G were received on the date of the closing of her loan transaction; that is, January 18, 2000, and that she did not receive any disclosures prior to that date. *See* debtor's declaration, exhibit 2 to dkt. #30. In support thereof, debtor submits a "Settlement Statement" dated January 18, 2000[7], as well as a "Notice of Right to Cancel" dated January 18, 2000[8]. R & G alleges that it delivered the TILA disclosures to the plaintiff on December 22, 1999, when she initially applied for her loan. In support of said allegation it submits a document entitled "ACUSE DE RECIBO RESPA, GOODFAITH Y APR" dated December 22, 1999, addressed to debtor, which states:

Dear Applicant:

In connection with the mortgage loan that you have applied for with this corporation, please acknowledge receipt of the following documents which were sent or given within 3 days of your application dated 12/22/1999.

1. Good Faith Estimate of Closing Cost

2. Special Information Booklet

3. Equal Credit Opportunity Notice

4. Truth in Lending Statement (APR)

*See* Exhibit 5 to dkt. #35. This document is signed by the debtor and a bank officer. However, the documents that it mentions were provided to the debtor on December 22, 1999,

---

[7]Exhibit 1 to dkt. #31.

[8]Exhibit 3 to dkt. #60.

- 12 -

are not included[9], so it has not been established that R & G provided to the debtor the

disclosures required by the TILA and the additional disclosures required by the HOEPA, as

recently interpreted by the First Circuit in Santos v. Doral Mortgage Corporation, 485 F.3d

12 (1st Cir. 2007).

Section 1640 of the Truth in Lending Act provides for the award of damages for

violation of the Act.  11 U.S.C. § 1640(a).  Pursuant to this provision, "[A]ny creditor who

fails to comply with any requirement imposed under this part, including any requirement

under section 1635 of this title,... is liable to such person in an amount equal to the sum of–

> (1) any actual damages sustained by such person as a result of
> the failure;
>
> (2)(A)(iii) in the case of an individual action relating to a
> credit transaction not under an open end credit plan that is
> secured by real property or a dwelling not less than $200 or
> great than $2,000; or
>
> (3) in the case of any successful action to enforce the
> foregoing liability or in any action in which a person is
> determined to have a right of rescission under section 1635 of
> this title, the costs of the action, together with a reasonable
> attorney's fee as determined by the court; and
>
> (4) in the case of a failure to comply with any requirement
> under section 1639 of this title, an amount equal to the sum of
> all finance charges and fees paid by the consumer, unless the
> creditor demonstrates that the failure to comply is not
> material."

---

[9]It should be noted that although R & G did not submit the documents it allegedly provided to the debtor on December 18, 1999, debtor submitted copies of two different APR disclosures dated December 22, 1999, as exhibits 4 and 5 to dkt. #60.  The documents are both signed by the debtor and have different loan numbers as well as different annual percentage rates, finance charges, amount financed, total payments and payment schedules.  These documents do not establish that debtor was given the disclosures required by the TILA and the HOEPA.

15 U.S.C. § 1640(a). This section further provides that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." § 1640(e).

The limitations period to recover damages for failure to make full disclosure as required by TILA and HOEPA begins to run when the loan agreement is executed, in this case, on January 18, 2000. Since debtor's complaint was filed in the district court on January 13, 2003, she is not entitled to receive damages under § 1640 for violation of the disclosure provisions of the TILA. However, since the court finds that R & G did not provide debtor with the required material disclosures, her right to rescind her mortgage is extended for three years from the date the disclosures are actually received.

*Right of Recision under the TILA*

Section 1635 of the TILA provides the consumer with the right to rescind certain consumer credit transactions. Pursuant to subsection (a), in the case of any consumer credit transaction in which the creditor will retain or acquire any security interest in the consumer's principal residence, the consumer has three business days to rescind the transaction, and this right must be disclosed by the creditor. 15 U.S.C. § 1635(a). Subsection (b) sets forth the procedure to be followed in the event of a rescission; namely, within twenty days of receipt of the notice of rescission, the creditor shall return to the consumer any money or property which was given and take any action necessary to reflect the termination of any security interest created by their transaction. 15 U.S.C. § 1635(a). Upon the performance of those obligations by the creditor, the consumer shall return the property or its reasonable value to the creditor. Id. Subsection (f) provides that the consumer's right of rescission expires three years after the date of consummation of the transaction, "notwithstanding the fact that the

- 14 -

information and forms required under this section or any other disclosures required under this part have not been delivered." 15 U.S.C. § 1635(f). Finally, pursuant to subsection (g), "[i]n any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind." 15 U.S.C. § 1635(g).

Section 226.23(d) of Regulation Z expounds on the effects of rescission under § 1635(b) and provides in subsection (1) that when a consumer rescinds a transaction the security interest becomes void and the consumer is not liable for any amount, including any finance charge. In subsection (2) it states that within twenty calendar days after receipt of a notice of rescission the creditor shall return any money or property and "shall take any action necessary to reflect the termination of the security interest." Regulation Z further provides in subsection (3) that the consumer may retain possession of the creditor's money or property until the creditor has met its obligation under paragraph (d)(2), and "[w]hen the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor." Finally, subsection (4) of Regulation Z provides that the procedures previously outlined may be modified by court order.

R & G argues that the debtor has no right to rescission of the transaction herein because it was a refinancing of a loan with R & G, with no new advance of principal, secured by an interest in the same property. It cites to section 1635(e)(2)[10] of the TILA, which provides that "[t]his section does not apply to ... a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured

_____

[10]*See also*, 12 C.F.R. § 226.23(f)(2).

- 15 -

by an interest in the same property."

The debtor counters that § 1635(e)(2) does not bar the transaction herein because the mortgage which was refinanced was originated by SMN Mortgage Corporation and later assigned to R & G; in support thereof it submits a mortgage note dated January 29, 1998, in the amount of $51,125.00, in which "SMN Mortgage Corporation" is defined as the "lender". Debtor cites to the Official Staff Commentary on Regulation Z, which provides:

> The exemption in section 226.23(f)(2) applies only to refinancing (including consolidations) by the original creditor. The original creditor is the creditor to whom the written agreement was initially made payable.

*See* "Official Staff Commentary on Regulation Z, 226.23(f0(4); *see also*, Matter of Porter, 129 B.R. 397, 403 (E.D. Pa. 1991) ("The subject transactions qualify as exempt refinancings if and only if the same creditor advances the prior extension of credit and the subsequent credit to the consumer.")

The court finds that the debtor has established that the original mortgage transaction was not made with R & G, while the refinancing mortgage transaction at issue was made with R & G; therefore, § 1635(e)(2) does not bar the debtor from rescinding the transaction at issue.

R & G argues that the court should enter summary judgment because the debtor/plaintiff cannot "tender back" what she received in the transaction; that is, she cannot pay back the loan amounts received, and therefore cannot comply with § 1635(b). According to R & G, the fact that plaintiff is in bankruptcy, consistently missed her monthly loan payments prior to filing, was unable to comply with her chapter 13 payment plan and had her case converted to chapter 7 demonstrate that she is unable to tender payment and, therefore, equitable considerations warrant a modification of the rescission process.

- 16 -

R & G cites to the decision in <u>Yamamoto v. Bank of NY</u>, 329 F.3d 1167 (9th Cir. 2003), for the proposition that the courts have the discretion to alter the rescission sequence set forth in § 1635 and Regulation Z, and may condition rescission on the tender of the loan proceeds received from the borrower. It further cites to the decisions in <u>Thompson v. Irwin Home Equity Corp.</u>, 300 F.3d 88, 90 (1st Cir. 2002) and <u>Large v. Conseco Fin. Servicing Corp.</u>, 292 F.3d 49, 54-55 (1st Cir. 2002) for the proposition that the assertion of the right to rescind a transaction does not automatically void a loan contract. R & G concludes that the preliminary issue in a rescission action is not whether rescission is warranted, but whether the borrower can fulfill her rescission obligation, because "it would be pointless to embark in a length-time consuming-legal procedure to determine if rescission is warranted to later learn that the borrower cannot fulfill her rescission obligations under § 1635(b)."

The debtor/plaintiff counters R & G's request for equitable modification of the rescission process is premature, that R & G is estopped by its own acts from requesting such a remedy, and that its argument is contrary to law in that the decision is <u>Yamamoto</u> was statutorily revoked by Federal Reserve Board amendments to Regulation Z. Said amendments clarified that a court's modification of rescission procedures under 15 U.S.C. §1635(b) and Regulation Z § 226.15(d) does not affect a consumer's substantive right to rescind, stating that "where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property." 12 C.F.R. Part 226, 69 F.R. 16769 ¶ 15(d0(4) (2003). According to debtor, the motion incorrectly presumes that R & G is entitled to repayment and that the debtor lacks the capacity to make the repayment.

- 17 -

R & G's logical leap, from <u>Thompson</u> and <u>Large's</u> holdings that a notice of rescission does not automatically "void" a loan transaction, to the conclusion court should determine whether a borrower can fulfill her rescission obligation before examining whether rescission is even warranted, is without merit. Further, it's reasoning that <u>Thompson</u> and <u>Large</u> "implicitly recognize that a plaintiff's right to rescission in this Circuit is necessarily conditioned to her tendering of the proceeds received from the lender" is plainly erroneous, even more so in the bankruptcy context. <u>See</u>, <u>e.g.</u> <u>Larocque v. CitiFinancial Mortgage Company-TX (In re Larocque)</u>, 283 B.R. 640, 642 (Bankr. D. R.I. 2002) (distinguishing <u>Thompson</u> because it did not occur in a bankruptcy setting). <u>Large</u> and <u>Thompson</u> were both decided in the context of a TILA claimant attempting to void contractual arbitration provisions; the borrower's ability to tender repayment was not at issue in either case, and neither involved bankruptcy.

The court finds that the rescission requested is not time barred; accepting the debtor/plaintiff's allegations of non-receipt of the required disclosures as true for the purposes of determining whether to enter summary judgment, since it has not been established that R & G ever provided the required material disclosures[11], the time to file a rescission action has not yet tolled.

However, the court is not able to determine from the evidence before it whether rescission actually occurred. Although debtor alleges that on October 18, 2002, she sent a letter to R & G requesting the rescission of the loan (*see* dkt. #31 at ¶ 19), R & G only admits

---

[11]Even if it is assumed that R & G provided the required material disclosures at the closing on January 18, 2000, debtor's action was filed on January 13, 2003, five days before the end of the three-year period following the execution of the mortgage on January 18, 2000. *See* <u>Rodrigues v. U.S. Bank</u>, 278 B.R. at 687.

- 18 -

to the receipt of a letter but denies that plaintiff thereby exercised her right of rescission. *See* R & G's "Answer to Complaint", exhibit 3 to dkt. #31. Neither party has submitted to this court the letter purportedly sent by debtor on October 18, 2002, and received by R & G on October 21, 2002; accordingly, the court has not been placed in a position to determine whether the mortgage was rescinded or not.

The court will schedule a hearing to address whether rescission actually occurred and determine whether debtor and R & G complied with their obligations under § 1635(b) and, accordingly, whether any damages were incurred and any amounts are owed, then establish a procedure for the tender of repayment.

### Conclusion

For the reasons set forth herein, debtor/plaintiff's motion for partial summary judgment is granted in part and denied in part. The court finds that the TILA, the HOEPA and Regulation Z apply to the facts herein as the loan was not obtained for a commercial purpose and was not a refinancing by the same creditor. Likewise, R & G's cross-motion for summary judgment is denied for failure to establish that it provided the plaintiff with the material disclosures, in the time required, by those statutes. The court further finds that debtor may have a right to rescind her mortgage if R & G failed to provide her with the required disclosures three days in advance of the transaction; however, the court is unable to determine from the evidence before it whether the mortgage was indeed rescinded. Accordingly, the court will set a hearing to determine whether R&G timely provided plaintiff the required disclosures, if rescission was properly done, whether R & G responded as required by the statute, and whether damages are warranted.

- 19 -

A pre-trial hearing on this matter is set for November 2, 2007 at 10:00 AM.

SO ORDERED.

In San Juan, Puerto Rico, this 19th day of July, 2007.

_____
ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Judge